UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

TERENCE and SHEILA BRIGGS,                             No. 11-10821

                              Debtor(s).
_____/

RICHARD R. LAGUENS, TRUSTEE OF THE
RICHARD R. LAGUENS LIVING TRUST,

                              Plaintiff(s),

       v.                                                          A.P. No. 11-1154

TERENCE BRIGGS,

                              Defendant(s).
_____/

Memorandum After Trial
_____

      Plaintiff Richard Laguens ("Laguens") is the trustee of his living trust. In this adversary proceeding, he seeks a nondischargeable judgment on behalf of his trust against Chapter 7 debtor and defendant Terence Briggs ("Briggs") pursuant to sections 523(a)(2) and (4) of the Bankruptcy Code.

      Briggs was a licensed mortgage broker and responsible broker for Sebastopol Mortgage Corporation ("SMC"). SMC was in the business of financing construction projects by brokering fractional interests in construction loans to individual investors. SMC would broker the loan and then

1

administer the payments to the borrower from its trust account. Laguens was one such investor, and had invested in numerous loans brokered by SMC for several years before SMC collapsed and Briggs lost his real estate license.

One of SMC's regular borrowers was Christopher K. Dluzak, who filed a bankruptcy petition and stopped paying on his loans in the fall of 2006. At that time, Laguens held fractional interests in three Dluzak notes. The court hereafter refers to these as the Lot 2, Lot 4, and Lot 9 notes. In all three cases, the investors foreclosed and took title to the properties. As to Lot 4, Laguens and his co-investors were almost made whole upon subsequent sale; he received his expected income and recovered $119,000.00 of his $125,000.00 investment. As to Lot 9, Laguens received a year's interest income but only recovered $40,000.00 of his $108,337.50 investment. His losses on the Lot 2 investment of $100,000.00 are unknown at this time, as Laguens and his co-investors still own the property. Laguens did not offer any evidence as to the value of Lot 2.

The evidence established sloppy record keeping by Briggs, but no wrongful conduct as to the investors in Lot 4 and 9 save for one thing. In each case, Briggs released $100,000.00 to Dluzak before any work had been done. These payments did not result in improvement to the properties or removal of any enforceable liens on the properties. Had these payments not been made, the losses of Laguens and the other investors would have been less.[1]

Since Laguens held about 12% of the Lot 4 loan, he would have recovered his full investment in the Lot 4 loan if the improper payment had not been made. Accordingly, he is entitled to damages of $6,000.00 as to Lot 4, which are nondischargeable pursuant to § 523(a)(4).

Laguens held about 11.46% of the Lot 9 loan. He therefore would have recovered $11,460.00

---

[1] Briggs promised Laguens and his co-investors that he would make distributions to Dluzak only according to the "Construction Loan Agreement." These were not produced at trial. As a fiduciary, the burden was on Briggs to demonstrate that he properly applied the funds; even an innocent failure to fully account for trust funds is a defalcation. *In re Hemmeter,* 242 F.3d 1186, 1190 (9th Cir. 2001). Having failed to demonstrate that the $100,000.00 payments were called for in the Construction Loan Agreements, the court must conclude that the payments constituted defalcations.

2

more on the sale of Lot 9 if the improper payment had not been made. Accordingly, he is entitled to damages of $11,460.00 as to Lot 9, which are nondischargeable pursuant to § 523(a)(4).

The situation regarding Lot 2 is entirely different. Briggs represented to Laguens that Laguens would be making 11% of a $900,000.00 loan. However, the loan was supposed to be for one subdivided lot and Dluzak was unable to obtain subdivision approval. Instead of informing Laguens of this fact and asking for his consent, Briggs unilaterally decided to fund one single loan for the entire subdivision. Thus, without his knowledge, Laguens ended up with a 2.9% interest in a $3.5 million loan. Had Laguens known the true facts, he would not have invested in this loan. When asked why he closed the loan when the circumstances had changed so much, Briggs admitted, "I obviously should have, I guess, let other people know that . . . ." [2:33;34]. Briggs was in fact obligated by law to disclose to Laguens all important facts and all of his knowledge concerning funds held in trust. *In re Lewis,* 97 F.3d 1182, 1186 (9th Cir. 1996). His failure to do so constituted both defalcation and fraud while acting in a fiduciary capacity. Laguens' losses on Lot 2, whatever they may ultimately be, are accordingly nondischargable pursuant to both § 523(a)(2) and (4).

For the foregoing reasons, Laguens shall have a nondischargeable judgment against Briggs for the following:

1. On account of Lot 4, the sum of $6,000.00 plus interest from the date of the sale to the date of the complaint at the investment rate, and at the federal legal rate thereafter;

2. On account of Lot 9, for $11,460.00 plus interest from the date of the sale to the date of the complaint at the investment rate, and at the federal legal rate thereafter;

3. On account of Lot 2, for $100,000.00, plus interest at the investment rate from the date of investment to the date of the complaint, and at the federal legal rate thereafter, less all funds hereafter recovered by Laguens. Laguens shall be ordered to inform Briggs of all such recoveries, and Briggs may seek amendment of the judgment on account of such recoveries.

4. Punitive damages of $25,000.00.

Laguens shall also recover his costs of suit.

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052. Counsel for Laguens shall submit an appropriate form of judgment forthwith.

Dated: November 5, 2012

Alan Jaroslovsky
U.S. Bankruptcy Judge

4